# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple I-pad tablet (Grey)<br>Seized as FP&F No. 2024250300038401, 0005<br>Target Device 5 | Case No.  '24 MJ3191 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-5, incorporated herein by reference.

located in the     Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC sec. 952 & 960 | Importation of Controlled Substances |

The application is based on these facts:
See Attached Affidavit of Federal Bureau of Investigation Special Agent Daniel P. Evans, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

KALEB A MENDEZ
*Digitally signed by KALEB A MENDEZ*
*Date: 2024.08.20 11:27:35 -07'00'*

*Applicant's signature*

Special Agent Kaleb A. Mendez, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by    telephone    *(specify reliable electronic means)*.

Date:  8/20/2024

*Judge's signature*

City and state:  San Diego, California     HON Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Kaleb A. Mendez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "**Target Devices**"):

> Apple I-phone
> Seized as FP&F No. 2024250300038401, 0009
> ("**Target Device 1**")

> Apple I-Phone (Blk)
> Seized as FP&F No. 2024250300038401, 0008
> ("**Target Device 2**")

> Blue Apple I-phone (gold case)
> Seized as FP&F No. 2024250300038401, 0007
> ("**Target Device 3**")

> TCL Tablet (Blk)
> Seized as FP&F No. 2024250300038401, 0006
> ("**Target Device 4**")

> Apple I-pad tablet (Grey)
> Seized as FP&F No. 2024250300038401, 0005
> ("**Target Device 5**")

as further described in Attachment A-1, A-2, A-3, A-4 and A-5, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952 and 960 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Karem Zamora ALDRETE ("ALDRETE") for importing approximately 18.40 kilograms (40.56 pounds) of fentanyl from Mexico into the United States. The

1

**Target Devices** are currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (ASAC Calexico), located at 2051 North Waterman Avenue, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent (SA) with Homeland Security Investigations (HSI) since September 2023. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I am a graduate of Loyola University in New Orleans, Louisiana, holding a Bachelor and Master of Arts in Criminology and Justice.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles, on pedestrians, or items belonging to pedestrians that enter the United States at Ports of Entry such as the Calexico East and West Port of Entry and the Andrade Port of Entry. With respect to the importation of narcotics in this manner,

I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible with bringing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the smuggler regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the smuggler to remotely monitor the progress of the narcotics, provide instructions to the smuggler and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the smuggler to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On July 21, 2024, at approximately 11:15 PM, Karem Zamora ALDRETE, ("ALDRETE"), a Lawful Permanent Resident of the United States, applied for entry into the United States from Mexico through the Calexico, California West Port of Entry through the primary vehicle lanes as the driver and registered owner of a 2007 Chevrolet Tahoe ("the vehicle") bearing California license plates. ALDRETE was accompanied by her three minor children.

8. A Customs and Border Protection Officer (CBPO) received a negative Customs declaration from ALDRETE. ALDRETE stated she was returning home to El Centro, California and had traveled to Mexico to share custody of her kids with her ex-husband. Due to an ongoing inspection operation, the vehicle was referred to the Z-Portal[1] for further inspection.

9. Upon further inspection, the Z-Portal produced multiple faulty images of the vehicle and the vehicle was subsequently referred to the secondary vehicle inspection area. Another CBPO received a second negative Customs declaration from ALDRETE. A Canine Enforcement Team was conducting secondary inspection operations when the

---

[1] The "Z-Portal" Vehicle Imaging System is a safe, efficient, drive-through passenger vehicle imaging system with enhanced capability for rapid scanning of conveyances for the presence of contraband, including hidden stowaways, narcotics, merchandise, and security threats.

4

Human and Narcotic Detection Dog alerted to the dashboard of the vehicle. Due to this alert, the vehicle was put through the Z-Portal once more and produced a normal image. The Z-Portal operator observed possible anomalies in the dash area.

10. Further inspection of the vehicle resulted in the discovery of 16 packages concealed in a compartment located within the dashboard and glove compartment area of the vehicle, with a total approximate weight of 18.40 kilograms (40.56 pounds). A sample of the substance contained within the packages field-tested positive for the characteristics of fentanyl. ALDRETE was placed under arrest at approximately 3:00 a.m., on July 22, 2024.

11. ALDRETE was advised of her Constitutional Rights, per Miranda, by Special Agent Mendez.. ALDRETE acknowledged her Miranda rights and agreed to answer questions without an attorney present. ALDRETE denied knowledge that the narcotics were in the vehicle. ALDRETE stated she visited Mexicali to share custody of her children with her ex-husband and dropped off her vehicle at a car maintenance shop from Thursday, July 18, 2024 until Sunday, July 21, 2024.

12. **Target Device 1** was found in the Defendant's hand while exiting the vehicle in the secondary inspection area. The secondary inspection CBPO instructed ALDRETE to place **Target Device 1** into the vehicle. ALDRETE later identified **Target Device 1** as her personal cell phone. **Target Device 2** was found in ALDRETE's purse. ALDRETE later identified **Target Device 2** as her work cell phone. **Target Devices 3**, **4**, and **5** were located in ALDRETE's vehicle. ALDRETE identified **Target Devices 3**, **4**, and **5** as belonging to her minor children, who appeared to be all under the age of ten years old, and claimed to not know her children's passwords to those devices. However, **Target Device 3** appears to be more like an adult's cell phone being that it had a designer brand, Kate Spade, cell phone case cover design and **Target Device 1**, which Defenddant had in her hand, appeared more like a child's cell phone as it had a cell phone case cover design with several animated cartoon characters across it. As described further below in paragraph 13, and in my training and experience, persons involved in smuggling activities will use

1 electronic devices belonging to others including children, relatives, and aquantances, to avoid detection by law enforcement or to insulate their criminal laiblity.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant could have been using any one of the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to conceal telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information related to smuggling activities within electronic devices belonging to others including children, relatives, and aquantances. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on April 22, 2024, up to and including July 22, 2024, the day after ALDRETE's arrest.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be

6

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

17. Law enforcement has manually searched **Target Device 1** with consent from ALDRETE and in her presence. However, the extraction resulting from this consent search appears to be missing readable data regarding messages. A further forensic extraction utilizing more advanced hardware is believed to be able to provide the missing data sought. Law enforcement has not previously attempted to obtain the evidence sought by this warrant from **Target Devices 2**, **3**, **4**, and **5**.

## CONCLUSION

18. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952 and 960. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

KALEB A MENDEZ
Digitally signed by KALEB A MENDEZ
Date: 2024.08.20 11:19:47 -07'00'

_____
Special Agent Kaleb A. Mendez
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of August, 2024.

_____
HON. ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-5

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple I-pad tablet (Grey)
>
>Seized as FP&F No. 2024250300038401, 0005
>
>("**Target Device 5**")



**Target Device 5** is currently possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, located at 2051 North Waterman Avenue, El Centro, California 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the electronic devices described in Attachments A-1, A-2, A-3, A-4 and A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 22, 2024, up to and including July 22, 2024.

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.